131    377
s91NW   641
f131    384

BENTON HARBOR TERMINAL RAILWAY CO. *v.* KING.

1. Railroads—Condemnation Proceedings—Jury—Employment of Stenographer.

In condemnation proceedings under the union railroad depot act (2 Comp. Laws, § 6356 *et seq.*), the jury is not bound to employ a stenographer to take the testimony.

2. Same—Failure to Reduce Testimony to Writing.

The failure of the jury in such a proceeding to reduce the testimony to writing is not reversible error, where appellant's request that it be so taken was coupled with a demand that a stenographer be employed for that purpose.

3. Same—Separate Parcels of Land.

It is not error for the jury to hear testimony as to several distinct parcels of land at the same time.

4. Condemnation Proceedings — Appeal — Evidence — Public Necessity.

Where the record on appeal in a condemnation proceeding does not contain all of the testimony, it cannot be said that there was no evidence of public necessity.

5. Same—Qualifications of Jurors.

On appeal in condemnation proceedings, an objection that the record does not show that the jurors were residents of the county will be disregarded, where appellant appeared and took part in the trial without raising any question as to the qualifications of the jurors.

6. Same—Arguments of Counsel—Waiver.

Where the jury in a condemnation proceeding unanimously voted not to hear arguments of counsel, but the record fails to show that appellant insisted upon his right so to be heard, the case will not be reversed.

Appeal from Berrien probate court; Ellsworth, J. Submitted April 11, 1902. (Docket No. 92.) Decided September 17, 1902.

Condemnation proceedings by the Benton Harbor Terminal Railway Company against Alexander C. King and Julia King. From a judgment for petitioner, respondents appeal. Affirmed.

*Gore & Harvey*, for appellants.

*Kelley & Chase*, for appellee.

Moore, J. This is an appeal from an order of the probate court approving the findings of a jury in condemnation proceedings brought under the provisions of 2 Comp. Laws, §§ 6361–6366, inclusive. The petition averred that petitioner was a body corporate organized under Act No. 244, Pub. Acts 1881; that its capital stock had been subscribed as required by the act; that it had surveyed its depot grounds and the route of its proposed tracks, made a map, etc., and filed it in the register's office.

"Your petitioner further shows that the lands and properties hereinafter described are required and necessary for the purpose of its incorporation, and that the taking thereof is necessary for public use, to wit, for the purpose of your petitioner's incorporation in constructing, operating, and maintaining its said railway freight and passenger depots, with the necessary railroad tracks, dock and wharf properties, and the appurtenances thereto, and as and for a right of way; that under this petition the said Benton Harbor Terminal Railway Company seeks to acquire title as and for a right of way, by special proceedings under the statute of the State of Michigan in such cases made and provided, to the following described pieces or parcels of land, situated in the county of Berrien and State of Michigan."

Then followed a description of nine different parcels of land, with a statement as to who owned them, respectively, with a further statement that the petitioner had been unable to acquire title to the lands, and asking for the appointment of commissioners "to ascertain and determine the necessity for taking and using each of said parcels of land, and all of said land, by your petitioner, for the purpose aforesaid, and, if they deem the same necessary to be taken for the purpose aforesaid, to ascertain and determine the damage or compensation which ought justly to be paid by your petitioner to the several parties interested therein, and to each of them, in manner and form as required by law."

An order was made by the court, which was served upon all the respondents. On September 20, 1901, Weldon Bros. entered their appearance for Charles W. Hall. Gore & Harvey entered their appearance for Alexander C. King and Julia King, William S. Dunbar and Alice T. Dunbar, and William Hamilton, Angelina G. Hamilton, and Theodore W. Hamilton. Motion on behalf of all the respondents was made to dismiss the proceedings because:

"1. The petition is filed under an act to authorize the incorporation of companies for the construction of union railroad stations and depots, with the necessary connecting

tracks, and the management of the same (Act No. 244, Pub. Acts 1881, approved June 9th); and said petition fails to show that it is filed on behalf of any company or companies whose existence and business render the condemnation of lands necessary for the purposes stated in said act.

"2. Said petitioner, as incorporated, is not entitled to the lands prayed for in its said petition, for the reason that the property sought to be condemned is not for 'union railroad stations and depots,' but it affirmatively appears to be for general railroad purposes, as stated in paragraph 4 thereof."

Motion to dismiss proceedings was denied. Answer of Charles W. Hall was filed. Mr. Hall demanded a jury, and one was summoned. After the jury was sworn, Mr. Hall demanded a separate trial, which was denied. After the jury was sworn, the following occurred: V. M. Gore, one of the attorneys for the respondents, demanded of said jury that the testimony be taken in writing, and that a stenographer be employed to take the testimony offered in the case. The court thereupon instructed the jury that a stenographer was not necessary, unless they desired the services of such stenographer, and the jury could take such testimony themselves as they wished. Mr. Gore excepted to the remarks of the court. No further action on this matter was taken. The jury were then provided with paper for the purpose of making such notations as they desired. Several witnesses were sworn upon the part of petitioner. The attorneys expressed a desire that the jurors visit the premises. They did so. After viewing the premises, three witnesses were sworn on behalf of the petitioner. Several witnesses were sworn upon the part of the respondents.

On convening at 7:30, the jury expressed a desire to hear no more testimony, unless the parties had proofs on new points. Mr. Gore remarked they would offer no more testimony, as they did not wish to offer testimony unless the jury desired to hear it. The court asked Mr. Gore if he desired the respondents King or Dunbar to tes-

tify. Mr. Gore replied he did not. Mr. Weldon desired to introduce further proofs, and the following-named witnesses were sworn and testified on behalf of the respondent Charles W. Hall: Seeley McCord, J. N. Norrington, and F. E. Avery. Testimony then closed. The jury declined to hear arguments of counsel. A vote of the jury was then taken by the court, which resulted in a unanimous vote declining to hear arguments of counsel. The jury were then instructed by the court that it was their duty first to find whether it was necessary to take the private property described in the petition in this cause for the use and benefit of the public for the proposed public improvement, and, if they found that the taking of this property was necessary, they should make a return to the court in writing that the taking of the property was nec- essary, and fixing the compensation and damages to be paid to the persons owning such property for the property taken for this purpose described in the petition. The jury then retired to a private room in charge of Martin Dwan, deputy sheriff. At 11 o'clock p. m. the jury rendered their verdict in writing, signed by all of said jurors, finding said proposed public improvement to be necessary, and awarded the compensation to be paid for such property as therein described as follows: William Hamilton, Angelina G. Hamilton, Theodore W. Hamilton, $850; Alexander C. King, Julia King, $150; Charles W. Hall, $450; William S. Dunbar, Alice T. Dunbar, $150. The Hamiltons did not appeal. The others did. The three cases involve practically the same questions.

It is said:

"1. The respondents were denied their rights and greatly prejudiced by the refusal of the jury to take the proceedings in writing, as required by law, upon request of the respondents.

"2. The respondents were prejudiced by the jurors proceeding to hear all the testimony concerning the several tracts of land jointly, and rendering one finding thereon, instead of obeying the statute, and determining the necessity for taking each parcel separately.

"3. There was no evidence of public necessity for taking the said lands.

"4. It nowhere appears in the record that the jurors were residents of the county of Berrien.

"5. The jury refused to hear the arguments of counsel, and the jury determined the question of public necessity and the important question of damages without any instructions from the court or counsel with reference to the elements of damage the jurors should take into consideration in such case."

The record shows the request was not simply that the testimony be taken in writing, but was coupled with a request that a stenographer be employed. When the jury were told by the judge that a stenographer was not necessary unless the jury desired it, counsel did not then request that the testimony be taken in writing, but appeared to acquiesce in letting the matter pass. There is nothing in the statute which requires the jury to employ a stenographer; and it is not made to appear that the jury refused to have the testimony reduced to writing.

As to the action of the jury in hearing testimony as to the several descriptions of land, the jury followed the requirements of section 6363.

As to the third objection, the testimony is not all before us, and we cannot say there was no evidence that there was a public necessity to take the land.

As to the suggestion that the record does not show that the jurors were residents of Berrien county, that objection was not made in the court below, but the parties appeared and took part in the trial. If in fact the jurors had not been residents of Berrien county, it is altogether likely the objection would have been made before the trial proceeded. It is too late to raise that question now.

As to the suggestion that counsel had a right to be heard by the jury before they rendered their verdict: The jury had viewed the premises, and had listened to such testimony as the parties presented. It does not appear that the respondents insisted upon the right to be heard by counsel. The record does show that considerable tes-

timony was taken after 7:30 o'clock in the evening, and the verdict of the jury was rendered at 11 o'clock at night. There is nothing in the record to show that, if counsel had insisted upon being heard, the jury would have refused to hear them. We are not called upon to say whether, under the statute, it would be error for the jury, after they have viewed the premises and listened to the witnesses, to refuse to hear counsel when counsel insist upon being heard.

The record discloses an attempt to comply with all the essential provisions of the statute, and we think there was such compliance. *Fort-Street Union Depot Co.* v. *Jones*, 83 Mich. 415 (47 N. W. 349), and cases there cited.

The judgment is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred.